UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| **JAMES HOLMAN, on behalf of himself and all others similarly situated,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**MACON COUNTY, TENNESSEE,** )<br>)<br>**Defendant.** ) | <br><br><br><br><br>No. 2:10-00036<br>Judge Campbell |

## MEMORANDUM

Pending before the Court in this civil rights action under 42 U.S.C. § 1983 is Plaintiff James Holman's "Motion for Class Certification" (Docket No. 15). Defendant Macon County, Tennessee has filed a response in opposition to the Motion (Docket No. 24), to which Plaintiff has replied (Docket No. 40). Holman's "Motion for Class Certification" is granted.[1]

## I. FACTUAL ALLEGATIONS

In his Complaint, Holman alleges that on April 12, 2009 he was arrested by Lafayette, Tennessee police officers for "sixth offense driving under the influence, driving on a revoked or suspended license and habitual traffic offender." (Complaint ¶ 2). Holman also asserts that his bail was set at $12,500 by Macon County Judicial Commissioner Ralph Meeks. (Id. ¶ 7). In setting bail, however, Judicial Commissioner Meeks allegedly did not question Holman as to "his employment,

---

[1] While Holman seeks to represent a class with no beginning date consisting of "all individuals who have had bail set or been denied bail" in Macon County, given that the statute of limitations for a Section 1983 action in Tennessee is one year, Sharpe v. Cureton, 319 F.3d 259, 266 (6th Cir. 2003), the class will be limited to those individuals who were presented to a Macon County Judicial Commissioner for the setting of bail since April 13, 2009, which is one year before the Complaint was filed in this case.

1

length of residence in the county, ownership of real property, family connections, or about any other factor which could reasonably or legally be used to make a fair and impartial determination of his likelihood to flee or be a danger to the community if released." (Id. ¶ 8). Holman alleges that instead of taking such factors into account, his bail was set based "solely on the charged offense and as a punishment for multiple convictions of driving under the influence." (Id. ¶ 9).

In his Memorandum in support of his Motion for Class Certification, Holman also alleges that after his arrest on April 12, 2009, he was arrested on May 11, 2010, on a charge of Violation of Probation. This time, however, Holman's "bail was set at zero or 'none' and his mittimus was signed" by Judicial Commissioner Ray Spears, Jr. (Docket No. 16 at 1).

In response to Holman's filings, Defendant admits that Holman's bail was set at $12,500 by Judicial Commissioner Meeks for the sixth driving under the influence offense. However, Defendant notes that ten days afer the arrest, Holman submitted an "Affidavit of Indigence" which indicated "that he had no home, job, or other ties to the community." (Docket No. 24 at 3). Based upon that Affidavit, Holman was appointed a public defender who did not seek a bail reduction on Holman's behalf. Ultimately, Holman pled guilty to a reduced charge of "4th Offense DUI," and was sentenced to a two year term by state Circuit Judge John Wootten. Credit was given for time served, the remainder of the sentence was probated, and Holman was placed on probation. (Docket No. 26-1, Harris Aff., ¶ 9).

As for the denial of bail in relation to the May 2010 probation violation charge, Defendant asserts that Holman's arrest was pursuant to a warrant issued by Judge Wootten. Though the mittimus was signed by Judicial Commissioner Spears, the "no bond" provision actually was set by Judge Wootten.

2

Holman claims that his treatment was similar to others who have been arrested in Macon County and that the county has deliberately instituted and approved "a system where bail is set based on something other than [Tennessee's] statutory elements or an individualized determination of bail," and that this policy violates the excessive bail provision of the Eighth Amendment, as made applicable to the states through the Due Process Clause of the Fourteenth Amendment. (Complaint ¶ 10). Holman seeks to represent a class consisting of "all individuals who have had bail set or who have been denied bail by a Macon County Judicial Commissioner without an individualized assessment of their likelihood to flee or be a danger to the community if released and all future individuals that will be subject to such a system." (Id. ¶ 17(a)).

## II. LEGAL DISCUSSION

A plaintiff has the burden to "establish his right to class certification," and a class may be certified only if the Court, after "rigorous analysis," finds that the prerequisites in Fed. R. Civ. P. 23(a) have been met. Beattie v. CenturyTel, Inc., 511 F.3d 554, 560 (6th Cir. 2007). Under Rule 23(a), a plaintiff can sue as a representative party only if the following exists:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to the foregoing Rule 23(a) factors, a plaintiff seeking to represent a class must also show that his claim falls within one of the three types of class actions set forth in Rule 23(b). Beattie, 511 F.3d at 560. Here, in his Motion for Class Certification, Holman seeks to certify a class under Rule 23(b)(2) which provides that a class action may be maintained "if the party opposing the

3

class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

In analyzing a request for class certification, a court does not "conduct a preliminary inquiry into the merits of a suit[.]" Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 155-58 (1974). Nevertheless, a court is allowed "to probe behind the pleadings before coming to rest on the certification question." General Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982).

Prior to addressing the specific Rule 23(a) factors and Rule 23(b)(2), and to avoid repetition, the Court will first discuss two common themes running throughout Defendant's opposition to class certification.

First, Defendant asserts Holman cannot meet any of the Rule 23(a) factors because he was never denied bail by a Macon County Commissioner and, as a consequence, suffered no injury at the hands of a county actor. After all, Holman did have a bail amount set by Judicial Commissioner Meeks for his April 12, 2009 driving under the influence and related charges, and he did not move to reduce the $12,500 bail amount, even though he could have done so. As for his violation of probation charge in May 2010, the decision to deny bail was actually made, not by a county Judicial Commissioner, but by a state actor, Judge Wootten.

As already explained, at this point in time the Court is not called upon to determine the merits of Holman's individual claim. Rather, the Court must determine whether Holman has put forth a colorable claim that he can assert on behalf of the putative class members. Holman's basic contention is that the *process* Macon County uses in setting or denying bail results in arbitrary bail determinations which are not based upon individualized considerations, and do not take into account

4

an accused's personal characteristics, dangerousness to the community, and potential risk for flight. As it now stands, Holman is in a position to assert that claim on behalf of himself and others because he contends that the $12,500 amount set by Judicial Commissioner Meeks was done without any inquiry into his employment, length of residency, ownership of property, family connections, the answers to which are all necessary in order to make a proper individualized determination about bail.

As for Defendant's assertion that the "no bail" determination was made by the state judge, the fact remains (on this record) that regardless of who made the determination, Judicial Commissioner Spears is the one who signed the mittimus. Leaving aside the question of whether the practice of a Judicial Commissioner merely signing off on a bail amount set by a state judge without any independent analysis is lawful in light of the fact that Constitutional responsibilities generally may not be abdicated, see, Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961), Defendant cites no authority for the proposition that a Judicial Commissioner is prohibited from making an independent bail determination, and Holman asserts state law is to the contrary.

Second, Defendant argues that Holman's claim and that of the class he seeks to represent fails because he relies on the Tennessee Constitution and the Tennessee Bail Reform Act to support his arbitrariness claim, neither of which provides for a private cause of action. However, Holman's complaint is replete with assertions that the allegedly arbitrary decisions by the Macon County Judicial Commissioners deprived him and others of their right to due process under the Fourteenth Amendment.

"The right of an accused to freedom pending trial is inherent in the concept of a liberty interest protected by the due process clause of the Fourteenth Amendment." Dodds v. Richardson, 614 F.3d 1185, 1192 (10th Cir. 2010). A liberty interest, in turn, "may arise from the Constitution

itself, by reasons of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005); see also, Vitek v. Jones, 445 U.S. 480, 489 (1980)("We have repeatedly held that state statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment").

Here, Holman's claim is that the Tennessee Constitution provides a right to bail, and the Tennessee Bail Reform Act clearly delineates that right by setting forth, in detail, the procedures to be utilized by Judicial Commissioners and how they are to go about making bail determinations, which includes an individualized assessment of a person's dangerousness and risk of flight. Again, the Court does not reach the merits of this argument, but notes that "a State creates a protected liberty interest by placing substantive limitations on official discretion." Kentucky Dep't. of Corrections v. Thompson, 490 U.S. 454, 453 (1989); see also, Georiades v. Long Beach Police Dept., 43 Fed. Appx. 134, 136 (9th Cir. 2002)(where state statute provides that arrestees were entitled to make three telephone calls, "this statute gives rise to a liberty interest protected by the Fourteenth Amendment's Due Process Clause"). Moreover, the Excessive Bail Clause of the Eighth Amendment itself, while not guaranteeing bail, requires that any bail imposed "not be 'excessive' in light of the perceived evil." United States v. Salerno, 481 U.S. 739, 754 (1987).

Thus, the Court rejects Defendant's contention that Holman cannot meet any of the Rule 23(a) factors because he was not denied bail by a Macon County Judicial Commissioner and/or because neither the state Constitution nor the Tennessee Bail Reform Act provide for a private cause of action. The Court turns to the relevant provisions of Rule 23.

6

### A. Rule 23(a) Factors

####    1. *Numerosity*

Under Rule 23(a)(1), a class action is an appropriate mechanism for resolution of common claims where the number of putative members is so numerous as to make joinder impractical. While "[t]here is no automatic cut-off point at which the number of plaintiffs makes joinder impractical," the "sheer number of potential litigants in a class, especially if it is more than several hundred" can satisfy Rule 23(a)(1)'s numerosity requirement. Bacon v. Honda of America Mfg., Inc., 370 F.3d 565, 570 (6th Cir. 2004).

Here, Holman indicates that, for 2009, the number of individuals who have been subjected to Macon County's bail procedures was in excess of 1400, and that, from the beginning of 2010 until October 2010, that number was in excess of 700 individuals. Defendant does not dispute those numbers (other than to argue that Holman is not part of a class denied bail by a Judicial Commissioner), and the Court finds that the class is so numerous as to make joinder impractical.

####    **2. *Commonality and Typicality***

These two factors – commonality and typicality – have similarities and "'tend to merge.'" Ball v. Union Carbide Corp., 385 F.3d 713, 7128 (6th Cir. 2004)(citation omitted). "The commonality requirement is satisfied if there is a single factual or legal question common to the entire class," while typicality requires that "the representative plaintiff's interests must be aligned with those of the class." Powers v. Hamilton County Pub. Defender Comm'n, 501 F.3d 592, 618 & 619 (6th Cir. 2007).

Apart from arguing that Holman cannot meet the typicality or commonality requirement because he did not have bail denied by a Judicial Commissioner, Defendant argues no class-wide

7

claims are common or typical because the matter of setting bail is based upon individual considerations, peculiar to each arrestee. In this regard, Defendant posits that to determine whether any individual can prevail, the Court would have to consider "(1) whether each plaintiff had an Eighth Amendment right to bail depending upon the nature of the charge; (2) whether each individual plaintiff was denied bail or set bail in an excessive amount so as to suffer a deprivation of that Eighth Amendment right, and (3) whether the deprivation resulted from the unconstitutional policy of the county." (Docket No. 24 at 11).

However, Defendant's arguments presuppose that the *process* utilized by the Judicial Commissioners resulted in the making of appropriate individualized bail decisions, something which is at the very core of the claim that Holman seeks to present on behalf of a class. In this regard, Holman also alleges that, among other things, Macon County Judicial Commissioners "increase bail as a punitive measure" to satisfy police officers, and deny bail at the request of police officers so that they have time to question an arrestee and conduct a further investigation. (Complaint ¶¶ 19(a) & (b)).

In a case against Hartsville/Trousdale County, involving the same counsel as in this case, the Court rejected the county's claim that a class action was not appropriate where, like here, the underlying allegation was that the Judicial Commissioners arbitrarily set (or denied) bail without making appropriate individualized inquiries in violation of the Constitution and state law. With regard to commonality under Fed. R. Civ. P. 23(a), this Court observed:

> Although, as Defendant contends, bail was set individually for each purported class member, creating individualized factual situations, the issues identified by Plaintiff relate to the *process* of setting bail, which is conduct applicable to all class members. Whether such a process or conduct existed is a question common to all class members. As to the alleged arbitrary process of setting bail, Plaintiff has satisfied the commonality requirements of Rule 23(a).

8

Tate v. Hartsville/Trousdale County, 2009 WL 4060480 at *3 (M.D. Nov. 20, 2009)(italics in original, internal citation omitted). For much the same reason, the Court found typicality because "Plaintiff's Eighth and Fourteenth Amendment claims arise from the same practice and course of conduct that gives rise to the claims of other potential class members," which was "typical of the other purported claims members as to that policy or practice." Id. Likewise in this case, the *process* of how Macon County goes about setting or denying bail is a common and typical claim of all class members, just as is the legal question of whether that *process*, as allegedly implemented and practiced, is lawful.

### C. *Adequacy of Representation*

There are essentially two components to the adequacy of representation prong of Rule 23(a)(4). First, it must appear that the class representative will vigorously prosecute the interests of the class, and this "usually will be the case if the representative[] '[is] part of the class and possess the same interests and suffer the same injury as the class members.'" Int'l Union, United Auto., Aerospace v. General Motors Corp., 497 F.3d 615, 626 (6th Cir. 2007)(citation omitted). Second, class counsel must be "'qualified, experienced and generally able to conduct the litigation'" on behalf of the class. Beattie, 511 F.3d at 563 (citation omitted).

Here, Defendant does not challenge the qualifications of Holman's counsel, but again asserts the previously rejected claim that Holman cannot meet any of Rule 23(a)'s requirements because he was never denied bail by a Macon County Judicial Commissioner. In addition, Defendant argues Holman is not an adequate representative because he "was on the run" for several months, missed his first noticed deposition on November 3, 2010, only to be arrested on November 10, 2010, when he appeared for his second noticed deposition. Defendant also claims that Holman's counsel has

9

been unable to respond to written discovery, suggesting that Holman is unable to properly represent the interests of the class.

In response, Holman claims that Defendant would have received the information it sought if the November 10, 2010 deposition had been allowed to go forward. Instead, Holman claims, Defendant is responsible for him being arrested when he appeared for his deposition and Defendant should not gain "a tactical advantage in this case by planning plaintiff's arrest in an attempt to have him disqualified." (Docket No. 40 at 9). Holman also indicates that shortly after his arrest in November 2010, he suffered a stroke which left him unable to sign his name. However, he is presently undergoing physical therapy and is able to speak.

This Court will not insert itself into the imbroglio surrounding the circumstances of Holman's arrest. Based upon the representation that Holman is able to speak and intends to fulfill his duties as class representative, the Court will not deny the request for class certification based upon the alleged inadequacy of the class representative. Further, as in Tate, the Court finds that Jerry Gonzalez is qualified counsel who will adequately protect the interests of the class members.

**B. Rule 23(b)**

Holman argues that this class should be certified under Fed. R. Civ. P. 23(b)(2). Because the Eighth and Fourteenth Amendment claims in this case arise from the same acts or refusals to act by Defendant, because the final injunctive relief and damages sought apply to the class as a whole, not individually, and because the claim for injunctive relief predominates over any claim for damages, the Court finds that Plaintiff has met the requirements of Rule 23(b)(2).[2]

---

[2] There is no request that notice be given to the class under Rule 23(c)(2) and the Court finds that no such notice is required.

10

## III. CONCLUSION

Based on the foregoing, the "Motion for Class Certification" (Docket No. 15) is GRANTED. The Court certifies a class of those persons who, since April 13, 2009, have been, are, or will be, presented to a Macon County Judicial Commissioner for the setting of bail, with the class issue being whether there is an unconstitutional practice, pattern or policy by Macon County Judicial Commissioners of setting bail, or denying bail, without an individual assessment of the accused's likelihood to flee or be a danger to the community if released. Jerry Gonzalez is appointed as class counsel.

_____
Todd J. Campbell
United States District Judge

11